·496, 497.   WALTERS *et al. v.* PORTER, receiver, and *vice versa.*

1. A suit for the benefit of creditors, against the stockholders of an insolvent corporation, alleging individual liability under the provisions of section 1856 of the Civil Code, is properly brought by the receiver of such corporation, under the direction of the court.
2. The petition as amended set forth a good cause of action, and the demurrer thereto was properly overruled.
3. "Persons who organize a company and transact business in its name before the minimum capital stock has been subscribed for" can not escape liability to the creditors of such company by selling their stock to the corporation itself before the debts are incurred. Such attempted sale is a device to evade liability under the Civil Code, § 1856, and is ineffective and void as to creditors.
4. A plea setting up the defense covered by the foregoing headnote should have been stricken on demurrer.

Complaint, from city court of Moultrie—Judge Shipp.   April 18, 1907.

Submitted October 15,—Decided November 25, 1907.

*J. A. Wilkes, J. D. McKenzie,* for Walters et al.

*T. H. Parker,* contra.

HILL, C. J.  Porter was appointed receiver of the Farmers'
Trading Company, by the superior court of Colquitt county.  On
investigation, he found that the corporation had never been le-
gally organized, nor the minimum amount of capital stock sub-
scribed for, as provided by the charter and as required by the law
under which the charter was granted.  He found, while the mini-
mum capital stock of the corporation was fixed by the charter at
$10,000, divided into shares of the par value of $10 each, that as
a matter of fact there had been subscribed and paid for only
152 1/2 shares, amounting to $1,525; that the stockholders who
had subscribed and paid for this number of shares had organized
the corporation under its corporate name, and had transacted the
business of the corporation before the minimum capital stock had
been subscribed for.  The receiver of the corporation, after tak-
ing possession of its assets and selling them under the direction
of the court of his appointment, and paying out to the creditors
of the corporation the net amount realized by him from the sale,
found that there was still a balance due by the corporation to its
creditors, amounting to $2,645.31, principal.  On considering
these facts, the judge of the superior court directed the receiver
to file suit against the stockholders and organizers of the corpora-
tion, for the purpose of collecting a sufficient amount of the min-
imum capital stock which had not been subscribed for, to pay in
full this amount of indebtedness of the corporation.  Certain
specific defects in the petition, as pointed out by special demur-
rers, were met by appropriate amendments; and a general de-
murrer was filed to the petition, as amended, which being over-
ruled, the defendants filed a direct bill of exceptions to that judg-
ment.  The plaintiff demurred to the answer of the defendants,
and especially to paragraph 3, on the ground that the averments
therein set out constituted no defense; the court overruled this
demurrer, and the plaintiff's cross-bill of exceptions assigns error
on this ruling.  We will first consider the case as made by the
demurrer to the allegations of the petition.

The suit by the receiver against the stockholders and organizers
of the corporation is brought under the provisions of section 1856
of the Civil Code, which declares that "Persons who organize a
company and transact business in its name before the minimum
capital stock has been subscribed for are liable to creditors to

make good the minimum capital stock with interest." Objection is made, by the defendants' demurrer, that the suit is brought in the name of the receiver, and should be brought by each individual creditor against the defendants individually, as stockholders in the corporation. This objection, we think, is fully answered by the decision of the Supreme Court in *Moore* v. *Ripley,* 106 *Ga.* 557 (32 S. E. 647), where it is held, that "when a banking corporation has been shown to be insolvent, and its assets placed in the hands of a receiver, and in pursuance of an order of the court the receiver undertakes to collect by suit the liability of the stockholders for the payment of the debts of the bank as fixed by the statute, all of the stockholders so liable may be joined as defendants in one action." And "in such a suit it is not necessary that the bank as a corporation shall be made a party defendant." "Courts of law have jurisdiction, on proper petition supported by proof, to render judgment in such a case." Receivers are charged with the duty, under the direction of the court, of collecting the assets of the corporation for the benefit of its creditors; and this right of the receiver to bring suit for this purpose is expressly given by the Civil Code, §1890. Each individual creditor is not required to bring a separate action for himself, but the receiver, acting for all the creditors, is the proper person, under the Civil Code, §§1856, 1890, to sue for the amount of the unsubscribed minimum capital stock of the corporation, in order that the aggregate debts of the corporation incurred on the faith of such minimum capital stock shall be paid. *Wheatley* v. *Glover,* 125 *Ga.* 710 (13-22) (54 S. E. 626). The receiver represents in one sense the corporation, and in another sense the creditors of the corporation; and, therefore, the whole matter can be settled in one suit brought by the receiver. *Moore* v. *Ripley,* supra.

It is insisted that the defendants, as stockholders, are not liable to the creditors of the corporation, because these creditors contracted with the corporation as a corporation either de jure or de facto, and therefore can not deny its corporate existence. Credit was given to the corporation, and not to the members of the corporation individually or as partners. In support of this position, the case of *Planters and Miners Bank* v. *Padgett,* 69 *Ga.* 159, is relied upon. We do not think that case is analogous to the one now under consideration. There the plaintiff had contracted with

the company as a corporation, receiving its promissory note, and it was held that he could not afterwards deny the contract with the corporation and sue the stockholders individually or as partners. Here the suit is against those who organized the corporation and transacted business in its name, to make good the minimum capital stock for the benefit of creditors. Creditors have the right to presume that the minimum capital stock allowed by the charter has been subscribed, from the fact that the corporation has commenced business. If this presumption is found to be untrue, then those who are responsible for the business of the corporation are liable for its debts, at least to the extent of the minimum capital stock with interest. The provisions of section 1856 of the Civil Code are explicit, and apply to all business corporations chartered under the laws of this State. The principle of the section is codified from the case of *Burns* v. *Beck,* 83 *Ga.* 471 (10 S. E. 121), where the Supreme Court holds as follows: "As a matter of law, when the stock of a corporation is not subscribed for up to the minimum amount of capital fixed by the charter, and none of it is paid in, if the corporators organize, elect themselves officers, proceed to business, contract debts up to and beyond the nominal capital, having paid in nothing whatever, they commit a legal fraud by so doing, and are liable to creditors to make good the minimum capital, together with interest thereon, should this be necessary to discharge the corporate debts." Of course the same principle is applicable to those who carry on the business of a corporation when only a portion of the minimum capital stock has been subscribed for, the measure of liability being the difference between the amount subscribed for and the amount required by the charter to be subscribed for as the minimum capital before the transaction of any business, where that amount or a portion thereof is necessary to the payment of the corporate debts. Without reference to the underlying principle that until a corporation is legally organized the co-adventurers will be liable as partners for all debts contracted in behalf of the aggregate body, either express or implied, we think this suit was properly· brought by the receiver, by order of the court, under the provisions of the Civil Code, §1856; and that the allegations of the petition, if proved as laid, constituted a case of liability under the

terms of this code section. We therefore affirm the judgment of the court on the main bill of exceptions.

The cross-bill assigns error upon the judgment of the court overruling the plaintiff's demurrer to defendant's answer. As a special plea in avoidance of liability, the defendants say, that "each of said defendants sold out their stock before the date of the debts, and transferred their certificates of stock in said corporation back to the corporation, and the same was done and shown on their stock-book." This plea was demurred to on the ground that "the defendants nor either of them, in law or equity, had any right to sell their stock to the corporation, thereby reducing the minimum capital stock not only from the amount subscribed, but from the amount advertised." The effect of the judgment of affirmance on the main bill of exceptions is to leave the case to be tried in the court below; and the question raised by the cross-bill is as to a material matter of defense, and a decision by this court on this question is properly invoked. *Holmes* v. *Langston*, 110 *Ga.* 862 (7) (36 S. E. 251) ; *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99) ; *Tucker* v. *Ball*, 68 *Ga.* 814. Under the statutory law of this State, all persons who deal with corporations created under the laws of this State have at least four guaranties: (1) That no corporation shall commence to exercise the privileges conferred by the charter until ten per cent. of the capital stock is paid in. (2) That no corporation can be organized and business transacted in its name before the minimum capital stock has been subscribed for. (3) That the full amount of the stock subscribed and not paid in constitutes a fund for the payment of corporate debts. (4) That all who organize a company and transact business in its name before the minimum capital stock has been subscribed for are liable to creditors, to make good the minimum capital stock with interest. Violations of the first two legal inhibitions, always and necessarily, create the two consequent grounds of personal liability for corporate indebtedness. Not only are those who deal as creditors with corporations protected by these express statutory provisions, but they have the further assurance in the well-settled principle that the capital stock of a corporation, whether paid or unpaid, is a trust fund for the benefit of creditors; and in this State, under the provisions of the Civil Code, §1856, even when the stock sub-

scribed for has been fully paid in, yet if the corporation is organized and debts created in its name before the minimum capital stock has been subscribed for, those who have thus subscribed and paid their subscriptions are nevertheless liable individually for these debts, to the amount of the difference between the actual subscription and the required subscription of the minimum capital stock. This doctrine must be maintained as to all the creditors of the corporation who are invited by the stockholders to give credit to the corporation on the faith of the capital stock. Stockholders who organize and transact business in the name of a corporation before its minimum capital stock has been subscribed for can not, by selling their shares to the corporation itself, rid themselves of individual liability to creditors who give credit to the corporation on the faith of such capital stock, which they have a right to presume has been fully subscribed for. It is universally recognized that a corporation can not reduce its capital stock either by declaring dividends which infringe upon the capital, or by release of stockholders from instalments to become due, or by accepting property or work at a false value, or in any like manner. *Hightower* v. *Thornton,* 8 *Ga.* 486 (52 Am. Dec. 412) ; *Hill* v. *Silvey,* 81 *Ga.* 508 (8 S. E. 808, 3 L. R. A. 150) ; Sawyer *v.* Hoag, 17 Wall. 610 (21 L. ed. 731) ; 10 Cyc. 450, 451.

The plea in this case, made by all the stockholders who are sued for a violation of section 1856 of the Civil Code, is that they had sold their stock in the corporation back to the corporation itself before the debts were incurred by the corporation. This seems to be a scheme not only for reducing the capital stock, but for destroying it altogether. All the stockholders are sued; all have sold their shares to the corporation. Who are the purchasers, and what becomes of the corporation when there are no longer any stockholders? It is a "mere shadow without substance." Whose money paid for the stock? Reduced to its last analysis, the plea amounts simply to this declaration: "Before we created the debts as a corporation, we sold out, as stockholders in the corporation, to ourselves as the corporation; and therefore we are not liable for the debts of the corporation incurred after the sale." Besides, under the allegations of the petition, which were admitted by the demurrer, this corporation never existed except in name. Its minimum capital stock had never been subscribed for. These de-

fendants were transacting business in its name without legal authority, and were liable for its debts as individuals. No artificial person was created by law that could buy their stock, and these necessarily occupied the dual position of vendor and vendee in the attempted sale.

*Judgment, on the main bill of exceptions, affirmed; on the cross-bill, reversed.*