No. 21.—JOHN NEAL, plaintiff in error, *vs.* BRIGGS H. MOULTRIE, WM. B. JOHNSTON, CHARLES CAMPBELL and THADDEUS G. HOLT, defendants in error.

[1.] *Held,* that the liabilities of the Directors, created by the 8th rule of the charter of the Commercial Bank at Macon, is a Statutory liability and not barred until after 20 years.

[2.] *Held,* that the limitation of six months, provided by the Act of 1776, to fines, forfeitures and penalties, does not apply to an action brought by a creditor against the directors, under said 8th rule.

[3.] *Held,* that in all cases where a Statute creates a right of action and recovery in individuals, or a particular class of individuals, such Statute is not penal, but remedial.

[4.] A case is not submitted to the Jury until the plaintiff has read the declaration, and is ready to submit his evidence.

Neal *vs.* Briggs *et al.*

[5.] The pleadings and proof in this case, held sufficient to entitle the plaintiff to go to the Jury.

Debt, in Bibb Superior Court.    Tried before Judge POWERS, May Term, 1852.

This was an action of debt, brought by the plaintiff in error against the defendants, as directors of the Commercial Bank at Macon.    The action is founded upon the following clause in the charter of the Bank:

"The total amount of the debts which the said corporation shall at any time owe, whether by bond, bill, note, or other contract, shall not exceed three times the amount of their stock paid in, over and above the amount of moneys actually deposited in their vaults for safe keeping.    In case of excess, the directors under whose administration it shall happen, shall be liable for the same, in their individual, natural and private capacities; and an action of debt may, in such case, be brought against them or any of them, their or any of their heirs, executors or administrators, in any Court of record in the United States, having competent jurisdiction, or either of them, by any creditor or creditors of the said corporation, and may be prosecuted to judgment and execution, any condition or covenant or agreement, to the contrary notwithstanding.    But this shall not be construed to exempt the said corporation, or the lands, tenements, goods and chattels of the same, from being also liable for, and chargeable with the said excess; and such of the directors, who may have been absent, when the said excess was contracted or created, or who may have dissented from the resolution or act, whereby the same was so contracted or created, shall be liable as other directors for said excess.    But such directors may be entitled to recover out of the directors assenting to such excess, by action of debt or on the case, the amount which they may have been compelled to pay."

The declaration alleges and sets forth the amount of the outstanding excess of indebtedness of the Bank, and continuously from that time, and that said excess in 1846 and 1847, exceeded three times the amount of the stock; and that more than

five hundred dollars of said excess remains upaid by said direc-tors, and which is more than plaintiff sues for, his claim being $255.00.

The defendants filed the pleas of

1. The General issue.

2. The six months' Statute of Limitations, applicable to "fines, penalties and forfeitures."

3. The expiration of the charter of the Bank.

On the trial, after plaintiff commenced reading his declara-tion to the Jury, and had proceeded through two or three sen-tences, he stopped and moved the Court to strike out the pleas of the defendant.

The Court overruled the motion, as coming too late.

When plaintiff had introduced his evidence and closed his case, defendant moved to dismiss the action, which motion was sustained by the Court, on the grounds:

1. Because the six months' bar of the Statute pleaded, did apply to the case.

2d. Because there was no legal cause of action alleged to have arisen or exist, within six months of the commencement of the action.

3. Because, under the pleadings and proof, there was no case made to entitle the plaintiff to go to the Jury.

Which decision is assigned as error.

Jno. Rutherford and Whittle, for plaintiff in error.

Poe and Nisbet, for defendants in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The important question made in this case is, whether the action is subject to the limitation of six months, prescribed by the Act of 1776, for penalties, fines and forfeitures.    *Prince,* 576. It is an action of debt, brought by a creditor of *the Commercial Bank,* at Macon, as holder of the bills of that institution, against the defendants, as directors, under the 8th rule of the charter.

*Neal vs. Briggs et al.*

This rule is made, by express provision in the charter, " a fundamental article of the constitution of the Corporation." That is, it is part and parcel of the charter itself. *Prince,* 99. §9 *of the charter of the Commercial Bank at Macon.* It is in the following words: " The total amount of the debts which the said Corporation shall at any time owe, whether by bond, bill, note or other contract, shall not exceed three times the amount of their stock paid in, over and above the amount of moneys actually deposited in their vaults for safe keeping. In case of excess, the directors under whose administration it shall happen, shall be liable for the same, in their individual, natural and private capacities ; and an action of debt may, in such case, be brought against them or any of them, their or any of their heirs, executors or administrators, in any Court of record in the United States, having competent jurisdiction, or either of them, by any creditor or creditors of said Corporation, and may be prosecuted to judgment and execution, any condition or covenant or agreement to the contrary notwithstanding. But this shall not be construed to exempt the said corporation, or the lands, tenements, goods and chattels of the same, from being also liable for, and chargeable with the said excess. And such of said directors, who may have been absent when said excess was contracted or created, or who may have dissented from the resolution or act whereby the same was so contracted or created, shall be liable as other directors for said excess. But such directors may be entitled to recover out of the directors assenting to such excess, by action of debt, or on the case, the amount which they may have been compelled to pay." *Prince,* 101. The tenth section of the Act of 1776, under which the statutory bar of six months was pleaded, enacts, that " in all and every case, where any penalty, fine or forfeiture whatsoever, hath been or shall hereafter be inflicted or imposed by any Act or Acts of the General Assembly of this Province already passed, or hereafter to be passed, and the time of<sub>x</sub> suing or prosecuting the offender or offenders against such Acts, not thereby provided, no information, action, suit, or prosecution, shall be had, brought, issued or commenced against the offender or offenders, against any

such Act or Acts, for or in respect of any such penalty, fine or forfeiture, unless the same be done within six months after the passing of this Act, if the offence hath already been committed, and within the like space of time after the offence committed for the future. And all and every offender and offenders, against any such Act or Acts, shall not from thenceforth be subject or liable to any penalty, fine or forfeiture, which may thereby be inflicted or imposed; any law, usage or custom, in any wise, to the contrary nowithstanding." *Prince*, 576.

[2.] The argument of the gentlemen for the defendants in error, assumes that the liability of the directors, imposed by the 8th rule of the charter of the Commercial Bank at Macon, is a penalty, and inasmuch as the charter provides no term of limitation to actions for its recovery, the suits brought under that rule, are subject to the six months' bar prescribed by the tenth section of the Act of 1776, above recited. If that liability be a penalty, then we grant that the position of the learned counsel, as to the six months' bar, is sound. But we do not believe that it is; and so believing, dissent from their conclusion as to the statutory bar. Our judgment is, that the liability of the directors, under the 8th rule, is a statutory liability, in the nature of a specialty, for which our laws prescribe no limitation, and is subject to the rule of the Common Law, in relation to domestic judgments, which presumes payment or satisfaction after twenty years. The doctrine involved here may be presumed to be familiar to this Court, at least so much of it as relates more directly to what is termed statutory liability; inasmuch as it has been within the last two years, the subject of frequent and most profound discussion. Indeed, whether this is a statutory liability or not, was not an open question when brought up. Not that we have adjudicated any case arising under this charter, but because we have decided cases arising under other charters, dependant upon the same principles. The 8th rule in this charter, it is true, creates a form of liability, and against parties different from any that we have heretofore been called to decide, but this case does belong to the same class of cases with the case of *Lane vs. Morris and others*, recently decided at Americus. I refer then to

those cases for reasoning and authority, to sustain our judgment in this case, and hold myself acquit from any obligation to enter at large upon the discussion of the question here, except in so far as the distinguishing peculiarities of this charter may make it necessary. Nor shall I anticipate any questions, which by possibility may yet arise in the case, but confine myself strictly to the points made in the record.

The argument drawn from the wording of this 8th rule, in favor of the construction that it imposes, simply a penalty, is by no means satisfactory. On the contrary, all its clauses seem to me to look to a remedy in behalf of creditors. There is no designation of the liability for the *excess* as a fine, a forfeiture or a penalty. It may be presumed that if the Legislature had intended to inflict a fine, to create a forfeiture, or to provide a penalty, they would have used language clearly expressive of such a purpose. They have said nothing whatever about a fine, a penalty or a forfeiture. They have *not* said that if there shall be an excess of debts, the *directors* shall be liable to prosecution for the violation of the charter, and upon conviction shall be liable to be fined ; nor have they said that in case of such violation, the *directors* shall forfeit any right, privilege, immunity or sum ; nor have they said that in case of such violation, they shall be punished by the infliction of a penalty.

[3.] The idea of a penalty, is therefore, negatively excluded, and it is affirmatively excluded by the use of such terms as clearly express a *civil liability, to be enforced by action and judgment in favor of any citizen who may be a creditor of the Bank.* They have said that in case of excess, the *directors* shall be liable, jointly and severally, in their individual, natural and private capacity ; that an action of debt may be brought against them in any Court in the United States, of competent jurisdiction, which may be prosecuted to judgment and execution, not only against *them,* but against their *executors or administrators,* (plainly indicating the *excess* to be a debt chargeable upon their estates,) and that this action may be so brought and prosecuted, by any creditor or creditors of the corporation. Now here is, with clearness and precision, the *liability* declared ; the *persons* in whose favor the directors are

liable, and the *remedy* by which the liability is to be enforced. From the terms of this rule, I say then, that it is difficult, if not impossible, to come to any other conclusion than that it is a remedial provision, designed to protect any creditor against loss by reason of an excess of debts. I concede that arguments derived from a mere criticism on the terms of a Statute, are at best, as a general rule, inconclusive. I admit also, that if the legal construction makes the liability a penalty, that that will prevail against the meaning of particular words ; yet it is at the same time true, that if the Legislature does plainly and distinctly declare its intention, the Act is not open to construction ; it needs, and can receive none. It stands self-interpreted, and Courts have nothing to do but to enforce it. The exclusion of interpretation, where none is needed, may be stated to be, notwithstanding the absurdity which it involves, the *first rule* of *construction.*

It is argued that the liability in this rule must be a penalty, because imposed *alone* on the *directors.* It is intended as a punishment for an official assumption of power, to wit : the contracting of debts to an amount larger than three times the amount of the stock paid in, in violation of the charter. If not, proceeds the argument, intended to be punitive, why discriminate between the stockholders who are and those who are not directors ; why to the liability created by the 15th rule of the charter, which charges all the stockholders with an ultimate liability for all the notes or bills issued, in proportion to the amount of the value of each one's share or shares, add this stringent liability upon such of the stockholders as happen to be directors ? In answer to this reasoning, I admit, that it was the intention of the Legislature to restrain the directors from over-issues, by making them liable for the excess. This liability, by operating upon the pecuniary fears of the directors, was no doubt intended to secure sound banking, and thus protect the whole community from the evils of an irredeemable currency. That this was the policy which suggested this onerous and discriminating liability of the directors, is not a matter of doubt. It was imposed upon them, because they are directors ; because they are the executive

Neal *vs.* Briggs *et al.*

agents of the corporation, charged with the duty of administering the charter. By holding up to their view a personal responsibility, the Legislature hoped to protect the whole country from the most disastrous of all monetary evils, a spurious currency. And it is also true, that to be charged upon this liabilty rule, will be felt as a punishment. The pocket nerve vibrates painfully responsive to the slightest unfriendly touch. But all these admissions do not yield the point that this is a penalty. It may be a *Statute liability,* and yet be intended as a punishment and a preventive against abuses. A Statute liability might just as well originate in such a policy as a penalty, and I will add, is just as well calculated to promote it. This is something more than a measure of prevention, founded in a policy which looks to the public at large; *it is also a measure of individual security, which creates rights in individual citizens;* and this is the distinction upon which this case, in our judgment, rests; a distinction founded in good sense, and as I hope to show, upon authority. It cannot be claimed with any show of plausibility, that the provision being considered, has any similitude to the *penalty of a bond,* and if it had the resemblance, would avail nothing in support of the defendants' plea. The six months' bar applies alone to penalties created by Statute, for which the creating Statute provides no limitation. The penal part of a bond, of which I am now speaking, is subject to a limitation provided by law, to wit: the limitation for instruments under seal; and if in principle, like a penal bond, then the same bar, by analogy, would apply to this case. There is, however, no analogy between a liability created by a Statute, and the penalty of a bond to secure the performance of covenants. That kind of penalty, therefore, is not within this discussion. Penalties are punishments, inflicted by law for its violation. In its broad signification, a penalty means any punishment, but, its more specific meaning is a *pecuniary punishment. Bouvier's Law Dict. Penalty,* 2 *vol.* 306, 307.

Where counsel claim this to be a penalty, I understand them to use the word in the last specified sense. That is, they hold

that the liability on the directors is a pecuniary punishment for the violation of the charter, which is a public law of the State.

This is clearly *the kind of penalty* barred in six months, by the Act of 1776. This kind of penalty, then, is the sanction of a public law, whether that law be mandatory or prohibitory. Just as death is the sanction of a law against treason. It is intended to constrain obedience by a pecuniary mulct, and is usually applied to offences not *mala in se*, but *mala prohibita*. It has for its object the enforcement of a law in which all the people of the State are *equally* interested, or the protection of rights common in kind to all the people of the State. Its infliction is variously provided for. Sometimes the Legislature provides for infliction by a criminal prosecution; at others, by an action, charging certain officials with the duty of instituting and prosecuting it; and at others again, by authorizing any citizen to sue for it, and making it the interest of somebody to sue, by giving the informer a part of the penalty. One characteristic of all penalties is, that when recovered, they belong equally to the public, and except where the informer gets part, they are applied to some designated use. Now, as a bank charter is a public law, and as sound banking is a policy in which all the people are interested—as the right to a sound currency is a right common to every citizen—it may be said, and with truth, that, considered in the light of the views just presented, this liability is a penalty. But mark, that the liability stops not at the public weal; the 8th rule creates and vests rights in individuals. It declares the *liability*, and proceeds to declare for whose personal benefit it is created, to wit: *the creditors of the corporation*—each and every of them. Not only so, but it places a remedy in their hands, to wit: an action of debt, and charges the estate of the directors with a debt in their favor. To whom does the recovery belong in this case? To the public, or to an informer, in part? No, but to a creditor. He alone can sue for the excess. Before any one can take a benefit under this Act, he must show himself a creditor; and, *eo instanti*, when any citizen becomes a creditor, in case of excess, he has an interest coupled with a

Neal *vs.* Briggs *et al.*

right—a personal, individual right—to recover, out of the directors, to the amount of his claim.

The charter creates the liability *in favor of individuals*, and *that distinguishes it from a penalty.* Without the *Statute provision*, the individual would have no such right—with it and under it, he has the right, and therefore, it is a *Statute liability.* The *law*, which is the very highest evidence of a legal liability, having created a debt in favor of the citizen, in the absence of an express limitation, it can be subject to no limitation short of that which will bar a debt of equal grade, to wit : a judgment. I could refer to numerous instances, to be found in our own Statute book, to illustrate the difference between this Statute liability and a penalty. Let óne suffice. The Act of 1818, against *manumission*, provides penalties against its violation. Among other things, it enacts that all wills and contracts for the manumission of slaves shall be void, and subjects all persons making, or concerned therein, to a penalty of $1000. It provides that this and the other penalties which it imposes, shall be appropriated, one-half to the use of the person suing or prosecuting for them, and the other half to the use of the County in which the offence is committed; and that they shall be prosecuted, recovered and enforced by action of debt or indictment in the Superior Courts, according to the ordinary course of proceedings therein. *Prince*, 794 *to* 798. The liabilities of this Act are penalties. They go, when collected, to the informer and the public. No person or persons are especially interested in them ; no person or class of persons acquire rights in them ; no person or class of persons are authorized to sue for them ; all have an equal right to sue; and suit or prosecution is insured, by giving one-half to the informer. The policy of this law against manumission is enforced by penalties to be recovered by a criminal prosecution, or by *qui tam* actions. Is it necessary to point out the difference between this Statute and the 8th rule of the *Commercial Bank charter ?* I am sure it is not. The actions given under such penal Statutes, are for the maintenance of a public policy, and the limitation applied is for the ease and relief of the citizens at large.

But the action given in this case is not alone to secure a

public policy; it is also to secure an individual right, and the reason upon which the limitation is made in case of a penalty, does not apply to this right, to wit: the ease and relief of the citizens. Whether the policy of the six months' limitation to penalties had its origin in a purpose of the Legislature to insure their infliction by prompt action, or in a merciful regard for the repose of offenders, it is manifest that these purposes do not, and could not require the same limitation to be applied to the claim of an individual, existing by authority of law. That the creditor may sue for and recover the amount of his debt, in case of excess, because of the provision found in the 8th rule of this charter, cannot be controverted. It is then a remedy for a right given *by Statute.* The position of the counsel for defendants in error, would subject *the right thus given* to a limitation of six months. Now, could the Legislature have so intended? Is it to be supposed that a security thus specially guarded by a Statute, was intended to be extinct, unless the creditor sues upon it within six months? To suppose this, would be to convict the Legislature of acting contrary to all the analogies of the law of limitation. Debts secured under seal are barred by our law in 20 years; by promissory note in six years, and upon account in four years; yet this debt having the security *of a Statute,* it is insisted, must be barred in six months.

It is claimed in the argument that this is a penalty, because the charter provides that it shall not exempt the corporation and its effects from liability for the excess. This fact is considered as demonstrative of the legislative will, that the property of the corporation should stand the security for the debt, whilst this liability is to stand as a punishment of the directors for violating the charter. The argument would be just as strong, if no such provision against an exemption of the corporation, was found in the 8th rule; for I conclude that without it, the corporation would be liable. It seems to have been inserted from abundant caution. The argument, if sound, proves too much. If this position of counsel be a just construction, then it follows, that in case of excess, a creditor may sue and recover *the penalty,* and recover, also, the amount of his debt, out of the corpo-

Neal *vs.* Briggs *et al.*

ration—thus having two satisfactions. The amount of his debt he recovers as *a penalty,* and the same amount he recovers out of the corporation, as a debt of the corporation. Upon this view of it, the Legislature stands convicted of the folly of granting a gratuity to one class of citizens, to wit: the creditors of the bank, to the exclusion of all others. There is no doubt in my mind, but that a recovery against the directors, will be a good plea in bar to an action against the corporation for the same debt. The liability of the directors is not *ultimate,* but immediate, if there is an excess. How far the directors, or any of them, having paid the debt, would be subrogated to the rights of the creditor against the corporation; or, what are their rights and obligations *inter sese,* are questions not made, and which I shall not now discuss.

The truth is, that all the remedies given in this charter, are to be considered as cumulative. If the Legislature has multiplied them unnecessarily, which I do not assert, that is no argument against any one of them. In construing the 8th rule, we are to look to the subject-matter upon which the Legislature was act·ing—that is, *banking ;* and to the object which they had in view, and that was to protect the citizen, into whose hands the bills or other obligations of the corporation might fall, from loss. In the light of these *criteria* for construction, there is no uncertainty or doubt brooding over it. They intended to charge the directors with a liability to the creditors, in order to protect them from loss, or the chances of loss. That they have done this by enactments of great severity, and which may, at times, work hardship, may be true. Whether that be so, or not, does not affect the obligations of this Court. We are here to give effect *to the laws of the land ;* and it is our purpose to do it without fear, favor, or affection.

In reference to this, and all similar provisions found in the charters of this State, it may be proper to say, that they are justified by the paramount importance of the subject; by the vital stake which the community holds, in the soundness of the circulating medium ; by the facility with which corporations may perpetuate abuses, and their corporative irresponsibility. Again, the liabilities imposed upon the corporators and directors, are

conditions coupled with the franchise. No man is bound to accept a bank charter, and no man incurs liability under it, until he does accept. If he does accept, he takes the benefit of the grant, and, also, the burthen of the obligations. And he accepts with his eyes open; the liabilities are not hid away in a corner; they are blazoned on the face of the charter; promulgated by publication; proclaimed, as it were, upon the housetop. What right, then, has he to complain? If he accepts upon a latent hope of impunity, growing out of the impracticability of enforcement, or a usage not to enforce, then we say, that the time has arrived when such hope is delusive.

The distinction taken, to wit: that this is not a penalty, because the Statute creates a right in individuals to sue and recover—and the further position, that in such cases, the limitation of penalties and forfeitures does not apply, are sustained by authority. By the Statute *2nd Edward VI. ch.* 13*th*, it is enacted, that if any person should take away tithes without setting forth the tenth, he should forfeit treble the value of the tithes taken away. This Statute is silent as to who should sue; but it was determined that the right to recover was in the party aggrieved by the taking away the tithes, to wit: the proprietor, and, therefore, his action under the Statute was not subject to the limitation Act. The decision in this case, and in all analogous cases, goes upon the ground of a statutory right in the plaintiff, and a statutory liability in the defendant. Wherever these exist, a Statute of limitation is not pleadable, any more than it is to a suit on a domestic judgment. *Cro. Car.* 513. *Car.* 1. 2 *Inst.* 650. *Angel on Limitations*, 83 *to* 85. The Statute of Limitations was held not to be pleadable to an *action of debt* given by the Statutes of *Westminister*, 2 *and* 1. *Ric.* 2, *C.* 12, against a Sheriff for an escape, because the Statutes upon which the plaintiff's action is founded, are specialties. *Jones vs. Pope*, 1 *Saunders' R.* 37, 8, 9. The same doctrine in a similar case was held in *Ward vs. Reeder*, 2 *Har. & McHen.* (*Md.*) *R.* 154. *Angel on Lim.* 83, *note* 3.

In *Woodgate vs. Knatchbrell*, *Ashurst J.* says, "it has been held, in many instances, that where a Statute gives cumulative

Neal *vs.* Briggs *et al.*

damages to the party grieved, it is not a penal action, and plaintiff is entitled to costs. 2 *T. R.* 154, 5. By the Act 31 *Elizabeth, c.* 5, §5, a limitation is prescribed to actions brought upon penal Statutes for the recovery of forfeitures. This Act of Limitation has been construed in England *not to extend to actions brought by the party grieved.* 1 *Show Rep.* 353, 4. 4 *Carth.* 233. *Comb.* 194. 4 *Mod.* 129. 12 *Mod.* 27. *S. C. Wills,* 443. 3 *M. & Selw.* 434. 1 *Tidd's Pract.* 13 *and* 14. These authorities are conclusive of this case; for if the limitation to penalties in England, by the 31*st Elizabeth,* extends not to actions on Statutes by the party aggrieved, the limitation to penalties, by our Act of 1776, extends not to *this suit,* brought by a *party aggrieved,* on a liability enacted by the *Charter of the Commercial Bank at Macon.* In *Goodridge vs. Rogers,* the *Supreme Court of Massachusetts* held exactly the same way, in a similar case. The Statutes of *Massachusetts* provide as a remedy for trespasses upon real estate, a forfeiture of treble the value, to be recovered by *any one or more of the persons interested in the lands,* who may sue for themselves and others—one moiety to go to the plaintiff, and the other to the whole of the other co-tenants. To an action brought under these Statutes, the defendant pleaded a Statute of that State, limiting actions *for forfeitures* on *penal Statutes.* (Just such an Act in principle, as ours of 1776.) The Court disallowed the plea—*Putnam, J.* saying: "Now, it is true, that in the actions upon the *St.* 1785, *c.* 62, for injuries done to real estate, one-half of the forfeiture is to inure to the benefit of him who prosecutes, yet it is in the nature of a remuneration for the injury he has received in common with his co-tenants. The action must be brought *by one or more of the co-tenants who had received the injury,* and not by any other person, who had not received any particular damage. Such actions may be brought by a common informer, for the recovery of penalties accruing in penal actions. The latter actions are given with a view to the preservation of the peace, and upon public policy and expediency, and the limitation is to be applied for the ease and relief of the citizens; but the former actions are evidently intended to provide *a mode of*

*redress for injuries inflicted upon, or suffered by individuals,* and are properly considered as remedial." 22 *Pick.* 496, 497. 8 *Ibid,* 320. I have only farther to say that when a Statute creates a liability, that liability is a specialty, and is subject to no limitation except such as applies to domestic judgments, and that is 20 years. That this 8th rule creates a Statute liability, see *Lane vs. Morris,* 8 *Geo. R.* 478. *Ibid,* 10 *Geo. R.* 164, 5, *and the authorities referred to.* The case of *Lane vs. Morris* grew out of a liability clause, charging stockholders, personally, in a different charter; but, as to the question whether this is not a statutory liability, I can see no difference between this case and that. Our opinion is, that the Court erred in sustaining the defendant's motion to dismiss the action, upon the ground of the plea of the Statute of limitations.

[4.] We also think that the plaintiff was in time to move to strike the plea—a case is not submitted to the Jury until the declaration is read, and the plaintiff ready to submit his proofs.

[5.] And, it is further our opinion, that, under the pleadings and proofs, there was a case made, sufficient to entitle the plaintiff to go to the Jury.

Let the judgment below be reversed, on all the points made.